1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10

11    EILEEN A. MENCHACA,            )    No. EDCV 12-2210-AGR
                                     )
12                    Plaintiff,     )
                                     )    **MEMORANDUM OPINION**
13                                   )    **AND ORDER**
                                     )
14        v.                         )
                                     )
      CAROLYN W. COLVIN,             )
15    Commissioner of Social Security,  )
                                     )
16                    Defendant.     )
                                     )
17    _____)

18        Plaintiff Eileen A. Menchaca ("Menchaca") filed this action on December 14,

19    2012.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the

20    magistrate judge.  (Dkt. Nos. 6, 7.)  On July 24, 2013, the parties filed a Joint Stipulation

21    ("JS") that addressed the disputed issues.  The court has taken the matter under

22    submission without oral argument.

23        Having reviewed the entire file, the court affirms the decision of the

24    Commissioner.

25

26

27

28

# I.

# PROCEDURAL BACKGROUND

On January 4, 2010, Menchaca filed an application for disability insurance benefits and alleged an onset date of July 30, 2008.  Administrative Record ("AR") 16, 84-87.  The application was denied initially and on reconsideration.  AR 16, 28-32.  Menchaca requested a hearing before an Administrative Law Judge ("ALJ").  AR 33.  On June 26, 2012, the ALJ conducted a hearing at which Menchaca, a medical expert ("ME") and a vocational expert ("VE") testified.  AR 630-51.  On August 6, 2012, the ALJ issued a decision denying benefits.  AR 13-23.  On October 18, 2012, the Appeals Council denied the request for review.  AR 5-8.  This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

### III.

### DISCUSSION

#### A.    Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

#### B.    The ALJ's Findings

The ALJ found that Menchaca met the insured status requirements through March 31, 2013.  AR 18.  Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Menchaca had not engaged in substantial gainful activity since July 30, 2008, the alleged onset date.  Menchaca had the severe impairments of degenerative disc disease of the cervical and lumbar spines.  *Id.*  She did not meet or equal a listed impairment.  AR 19.  She had the residual functional capacity ("RFC") to perform light work.[2]  She could lift/carry twenty pounds occasionally and ten pounds frequently; sit for six hours and stand/walk for two hours with normal breaks; occasionally use both of the upper and lower extremities for pushing or pulling;

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b) (same).

occasionally climb stairs, bend, balance, stoop, kneel, crouch or crawl; never climb ladders, ropes or scaffolding; never work at unprotected heights; and frequently perform gross and fine manipulation.  *Id.*  The ALJ found that Menchaca was capable of performing her past relevant work as an order clerk (retail store), as actually and generally performed.  AR 22.

### C.    Credibility

Menchaca contends the ALJ improperly discounted her credibility.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The ALJ found that Menchaca's medically determinable impairments could reasonably be expected to produce the alleged symptoms.  AR 21.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her] symptoms only by offering specific, clear and convincing reasons for doing so."  *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'"  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation."  *Bunnell*, 947 F.2d at 346

1   (citing SSR 88-13) (quotation marks omitted).  The ALJ may consider (a)

2   inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies

3   between a claimant's statements and activities; (c) exaggerated complaints; and (d) an

4   unexplained failure to seek treatment.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th

5   Cir. 2002).

6         The ALJ discounted Menchaca's credibility.  AR 21.  The ALJ relied primarily on

7   five reasons:  (1) activities of daily living; (2) inconsistencies in Menchaca's statements;

8   (3) Menchaca's uncertainty regarding her symptoms; (4) receipt of unemployment

9   benefits after the alleged onset date; and (5) inconsistency with the objective medical

10  evidence.  AR 19-21.

### 1.    Daily Activities

12        An ALJ may consider a claimant's daily activities when weighing credibility.

13  *Bunnell*, 947 F.2d at 346.  The ALJ reasonably determined that Menchaca's daily

14  activities were inconsistent with the alleged degree of disability.  AR 21.  On April 30,

15  2012, Menchaca reported that she "exercises 140 minutes per week at a moderate to

16  strenuous level."  AR 619.  In an October 26, 2010 Questionnaire, Menchaca reported

17  that she was able to do light housework (including washing the dishes, dusting and

18  laundry), do grocery shopping two to three times per week on her own and drive a car

19  for thirty to forty minutes.  AR 124-25.  On January 14, 2009, treating physician Dr.

20  Goodlow indicated Menchaca could "do swimming [and] bicycling" exercises.  AR 283.

21  When the evidence is susceptible to more than one rational interpretation, the court

22  must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

### 2.    Inconsistent Statements

24        The ALJ properly relied on inconsistent statements.  *See Johnson v. Shalala*, 60

25  F.3d 1428, 1434 (9th Cir. 1995); *Thomas*, 278 F.3d at 958–59.  Menchaca testified she

26  has carpal tunnel syndrome.  AR 21, 636.  However, her disability reports do not list

27  carpal tunnel syndrome as a basis for the application.  There is no evidence Menchaca

28  was diagnosed with carpal tunnel syndrome.  *See* AR 636.  Dr. Goodlow did not report

any functional limitations related to carpal tunnel syndrome and noted Menchaca did not have any significant limitations with reaching, handling or fingering.  AR 605, 610.

### 3. Uncertainty of Symptoms

The ALJ found that Menchaca "demonstrated uncertainty about her own symptoms" and used the following example: "When a physician asked her if she had any numbness, she replied, 'I don't know' and 'looked to her husband for an answer.'"[3] AR 21, 332.  As with other ordinary techniques of credibility evaluation, the court finds that Menchaca's vague symptom testimony constitutes specific evidence on which the ALJ could properly rely in discounting her credibility.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (the ALJ may consider ordinary techniques of credibility evaluation).

### 4. Unemployment Benefits

The ALJ found that Menchaca's receipt of unemployment compensation benefits during her period of alleged disability is facially inconsistent with her allegation of disability.  AR 21, 640-41.  This is because in order to receive unemployment benefits, she would have had to certify that she was "willing and able to engage in work activity."  AR 21.  Although receipt of unemployment benefits can undermine a claimant's alleged inability to work full time, the record does not establish whether Menchaca held herself out as available for full-time or part-time work.  When, as here, the record is unclear, the ALJ's reason is not supported by substantial evidence. *Carmickle v. Comm'r,* 533 F.3d 1155, 1161–62 (9th Cir. 2008).

### 5. Objective Medical Evidence

As discussed more fully below, the degree of Menchaca's subjective allegations was not supported by the objective medical evidence.  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the

---

[3] The ALJ noted evidence in the record that Menchaca's "husband 'exaggerate[s]' his wife' medical problems."  AR 21, 110.

1   ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th
2   Cir. 2005).

**6.     Conclusion**

4   The ALJ's error in relying on receipt of unemployment benefits without a record
5   as to whether Menchaca certified she was available for full-time employment does not
6   automatically warrant remand.  In *Carmickle*, the Ninth Circuit concluded that two of the
7   ALJ's reasons for an adverse credibility finding were invalid.  When, as here, an ALJ
8   provides specific reasons for discounting the claimant's credibility, the question is
9   whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's
10  "remaining reasoning *and ultimate credibility determination*." *Id.* at 1162 (italics in
11  original).  In light of the ALJ's valid reasons for discounting Menchaca's credibility,
12  substantial evidence supported the ALJ's credibility finding.  *See Bray v. Comm'r. of
13  Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (error in one of four reasons for
14  discounting credibility was harmless).  The ALJ's credibility finding is supported by
15  substantial evidence, and this court "may not engage in second-guessing." *Thomas*,
16  278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th
17  Cir. 1999)).

**D.     Treating Physician**

19  Menchaca contends that the ALJ erred in rejecting the opinion of treating
20  physician, Dr. Goodlow, in favor of the opinion of ME Dr. Alpern.

21  An opinion of a treating physician is given more weight than the opinion of
22  non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an
23  uncontradicted opinion of a medically acceptable treating source, an ALJ must state
24  clear and convincing reasons that are supported by substantial evidence.  *Bayliss v.
25  Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating physician's opinion is
26  contradicted by another doctor, "the ALJ may not reject this opinion without providing
27  specific and legitimate reasons supported by substantial evidence in the record.  This
28  can be done by setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas*, 278 F.3d at 956-57.

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'"  *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis in original).  When "the ALJ relied on a nonexamining source's testimony on limitations to reject the opinion of the claimant's treating physician, the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by all other evidence in the record.'"  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation and emphasis omitted).  In *Andrews*, the Circuit declined to hold that a nonexamining physician's opinions inevitably deserve little or no weight.  *Id.*  The regulations provide that the weight given to a nonexamining physician's opinion depends upon the strength of the explanation for that opinion.  20 C.F.R. §§ 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions."), 416.927(c)(3).

Here, the ALJ gave "little weight" to Dr. Goodlow's opinion, not because of the ME's opinion, but because Dr. Goodlow's opinion was inconsistent with his own treating records and Menchaca's disability reports and testimony.  AR 22.  The ALJ's reasons are supported by substantial evidence.

On December 27, 2010, Dr. Goodlow wrote a letter indicating that "[i]n [Menchaca's] neck she has degenerative arthritis, fusion at C5-6 and spinal cord damage from 2010 MRI scan" and "[i]n her lower back she has moderate degenerative arthritis and protruding disc at L3-4 and L4-5 from MRI scan in 2009."  AR 611.  He noted that Menchaca has continued back and neck pain which frequently radiates down

her arms and legs.  *Id.*  He concluded that Menchaca is permanently disabled and unable to return to work.  *Id.*

On December 23, 2011, Dr. Goodlow completed a "Cervical Spine Residual Functional Capacity Questionnaire" and "Lumbar Spine Residual Functional Capacity Questionnaire."  AR 601-10.  He had seen Menchaca every three to four months since January 2009.  AR 601, 606.  He diagnosed degenerative joint disease of the neck/back and chronic back pain.  AR 601, 606.  Dr. Goodlow opined that Menchaca had limited cervical range of motion.  AR 601.  Menchaca had severe headache pain associated with her cervical spine causing vertigo, nausea, inability to concentrate and impaired sleep.  AR 602.  Menchaca has headaches four to five times per week and fifteen to twenty times per month that lasted two to three hours each.  *Id*.  Dr. Goodlow noted that Menchaca's symptoms included neck/back pain, numbness on arms. bilateral hip pain, fatigue, poor sleeping and swelling of her left leg at times.  AR 606.  He noted that Menchaca had a reduced range of motion with lateral rotation of her neck and her straight leg test was positive.  AR 607.

In both Questionnaires, Dr. Goodlow opined that Menchaca could sit for thirty minutes; stand for twenty minutes; sit, stand and/or walk for less than two hours; frequently lift less than ten pounds; occasionally lift ten pounds; occasionally look down and turn her head right or left but rarely look up or hold her head in a static position; occasionally twist, stoop (bend), crouch/squat and climb stairs but never climb ladders; and does not have any reaching, handling or fingering limitations.  AR 603-05, 608-10.

An ALJ may reject a treating physician's opinion that is not supported by treatment records.  *Bayliss*, 427 F.3d at 1216.  Dr. Goodlow opined on the Cervical Questionnaire that Menchaca often suffered from severe headache pain.  AR 602.  However, there are no reports of headaches in any of Dr. Goodlow's treatment notes, and Menchaca does not to cite any supporting records.  Indeed, Menchaca concedes that "headache complaints may not be supported."  JS at 14.  Menchaca did not allege having headaches in her disability reports or at the hearing.  AR 104, 127-28, 632-51.

Dr. Goodlow opined on the Lumbar Questionnaire that Menchaca had positive straight leg raising at ninety degrees.  AR 607.  However, as noted by the ALJ, Dr. Goodlow did "not report any abnormal findings in an examination ten days earlier; and records from October 2010 and June 2012 (or the period prior and subsequent to the questionnaire) show either normal straight leg raising tests or fail to mention such tests at all."  AR 22 (citing AR 206-08 (October 2010), 615-16 (December 13, 2011), 620 (April 2012), 625 (June 2012).)

The ALJ observed that Dr. Goodlow's more recent examination of Menchaca did not support the significant limitations he assessed.  AR 21.  Dr. Goodlow's April 2012 examination of Menchaca notes "tenderness, pain, spasm, and decreased range of motion of the cervical spine; tenderness, pain, spasm, but normal range of motion of the lumbar spine; and no weakness or atrophy along with normal stance, muscle tone, straight-leg raising tests, and gait."  AR 21, 624-25.  Dr. Goodlow reported "mild to moderate exacerbation of [Menchaca's] cervical and lumbar disorders but concluded that they were "well controlled."  *Id.*  The ALJ may draw reasonable inferences logically flowing from the record.  *Batson v. Comm'r. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (ALJ's findings must be upheld "if supported by inferences reasonably drawn from the record").

The ALJ properly relied upon the opinion of the ME, Dr. Alpern,[4] as consistent with the opinion of treating physician Dr. Stiner and Menchaca's MRIs.  AR 20, 240-44.  Dr. Alpern reviewed the entire medical record and questioned Menchaca at the hearing.[5]  AR 22, 635-36.  Dr. Stiner noted that Menchaca had a normal neck and musculoskeletal range of motion.  AR 241.  She had normal sensation, strength and

---

[4]  Dr. Alpern opined that Menchaca could lift twenty pounds occasionally and ten pounds frequently; sit for six out of eight hours; stand or walk for two out of eight hours; occasionally push/pull with both the upper and lower extremities; frequently handle and finger; and no ropes or ladders.  AR 637.

[5]  Menchaca argues that Dr. Goodlow reviewed all of the evidence that Dr. Alpern reviewed, but that argument is not supported by the record.

reflexes.  She had a normal straight leg raise test and her gait was normal.  *Id.*  Dr. Stiner opined that results from Menchaca's April 2008 MRI of the lumbar spine and June 2009 MRI of the cervical and lumbar spine were "unremarkable for severe pathology that requires immediate surgery."  AR 20, 249.  Dr. Stiner recommended that Menchaca "continue with conservative measures for her neck and back pain that would include NSAID's, physical therapy, yoga, pilates, and back and neck exercises."  AR 249.  The ALJ noted that the November 2010 cervical spine MRI revealed "no significant interval change" from the June 2009 MRI.  AR 21, 375-74.

Menchaca has not shown error.

### IV.

### ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:  January 15, 2014

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

11